566 A.2d 287

**COMMONWEALTH of Pennsylvania**

v.

**Ernest POTTS, Appellant.**

Superior Court of Pennsylvania.

Submitted May 25, 1989.

Filed Nov. 15, 1989.

594

596

Irene H. Cotton, Philadelphia, for appellant.

Donna G. Zucker, Asst. Dist. Atty., Philadelphia, for Com., appellee.

Before BECK, JOHNSON and HOFFMAN, JJ.

BECK, Judge:

On appeal appellant first questions whether his conviction for murder of the first degree based upon an accomplice liability theory was proper when it was based upon wholly circumstantial evidence. The second, third, and fourth assignments of error charge that trial counsel was ineffective for failing to object to the Commonwealth's proceeding on an accomplice liability theory, for failing to preserve the objection that evidence of defendant's prior bad acts should not have been admitted into evidence, and for failing to impeach a Commonwealth witness.

This is a direct appeal by Ernest Potts from a judgment of sentence of life imprisonment for the offense of murder of the first degree. On March 17, 1980, at about 7:00 p.m.,

Ernest Potts and David Owens met and drove in a car together to the residence of Michael Cunerd as designated by Owens. This trip was being made to inquire into an alleged burglary of Potts' apartment during which two pounds of marijuana, various articles of jewelry, and $400.00 in cash had been stolen. Potts testified at trial that subsequent to the alleged burglary, Owens told him that Cunerd was the person who had burglarized his apartment. Potts and Owens successfully accosted Cunerd on a street corner near his residence. Potts contends that he then exited from his car and told Cunerd that he wanted to speak with him. At that time Cunerd allegedly excused himself by claiming that he needed to first talk with a neighbor, but that he would return to speak with Potts subsequent to that conversation. Potts and Owens waited for Cunerd's return in Potts' car. When Cunerd returned, Potts asked him to get into his car and Cunerd obliged. Potts contends that at this time, with Potts operating the car, a three-way conversation ensued during which Potts continually asked Cunerd if he had burglarized his apartment. Cunerd denied having committed the burglary, and Owens asserted his belief that Cunerd had committed the alleged burglary. The three eventually reached a deserted area in southeastern Philadelphia known as the "Meadows". Once at the "Meadows", the conversation in the car continued, with Cunerd protesting his innocence and Owens periodically grabbing Cunerd's shoulders from behind and shaking him. Eventually, Potts contends that he ordered Cunerd from the car stating that he and Cunerd "were going to fight." Potts got out from the driver's door and confronted Cunerd outside the passenger door. Ultimately, Potts pushed Cunerd up onto the front hood of the car. At this point, Owens exited the car through the passenger door. Potts testified at trial that at this time, Cunerd jumped off the hood of the car and ran from the car with Owens in pursuit. Owens caught Cunerd within 100 yards of the parked car and began to stab him in the back. When Cunerd had fallen, Owens pinned him with

his knees and stabbed him many more times. During this time, Potts contends that he watched the stabbing from a distance of approximately 30 feet. After the stabbing, Potts approached Owens and told him to "See if anything is in his pockets." Owens did so, and in a statement given to the police after his eventual arrest, Potts claimed that he may have seen his wedding ring which was allegedly taken during the burglary. Owens also found a small spoon in the deceased's pocket which he placed in the deceased's mouth and thereafter kicked down his throat. Potts claims that at this point, Owens told him "Let's get the hell out of here. The m—— f—— is dead." During the course of this incident, Potts was armed with a pen-gun and Owens with a knife with a seven-inch blade. Potts contends that as he drove Owens back to his home, Owens advised that "If anything ever comes down on this, you don't know anything."

The trial court summarized the subsequent events.

The body was discovered by an employee working in the "Meadows" area in the early morning of March 18, 1980. Following Owens' arrest on January 27, 1981, Potts was thereafter arrested on a warrant on February 5, 1981. Potts' arrest stemmed from Owens' statement to the police and additional information furnished by William Dales, a friend of both defendants. At trial, Dales testified that he had had a telephone conversation with Potts about two days before the killing. In that telephone conversation, Potts told Dales that his house got "robbed" that he knew Mikey Cunerd (deceased) did it, that marihuana [sic], speed pills and jewelry were stolen, and that he was going to kill the deceased.

Trial Court Op. at 8.

Appellant first contends that since his stated intention was to beat up the deceased, rather than to kill him, there was insufficient evidence to establish his intention to kill Cunerd, as required for conviction of murder of the first

degree.[1]

As we stated in *Commonwealth v. Taylor*:

... In reviewing the sufficiency of the evidence, we must view the evidence presented and all reasonable inferences taken therefrom in the light most favorable to the Commonwealth, as verdict winner. The test is whether the evidence, thus viewed, is sufficient to prove guilt beyond a reasonable doubt. The credibility of witnesses and the weight to be accorded the evidence produced are matters within the province of the trier of fact; the fact finder is free to believe all, some, or none of the evidence.

324 Pa.Super. 420, 422, 471 A.2d 1228, 1229 (1984) (citations omitted); *See also Commonwealth v. Hughes*, 521 Pa. 423, 434, 555 A.2d 1264 (1989). With this standard in mind, we review appellant's claim.

The Pennsylvania Crimes Code provides that for liability to attach for an offense, the offense must be committed by the person's own conduct or by the conduct of another person for which he is legally accountable, or both. 18 Pa.Cons.Stat.Ann. § 306(a) (Purdon 1983). A person is legally accountable for the conduct of another if "he is an accomplice of such other person in the commission of the offense." 18 Pa.Cons.Stat.Ann. § 306(b) (Purdon 1983). A person is an accomplice of another person if "with the intent of promoting or facilitating the commission of the offense, he: ... aids or agrees or attempts to aid such other person in planning or committing it.... 18 Pa.Cons. Stat.Ann. § 306(c) (Purdon 1983).

■ Thus, to be convicted as an accomplice of the crime of murder of the first degree, a two-step analysis is required. The first step is to consider whether an accused possessed the requisite criminal intent. An accomplice's

1. Section 2502 of the Crimes Code provides in relevant part: Murder of the first degree.—A criminal homicide constitutes murder of the first degree when it is committed by an intentional killing.

"Intentional killing." Killing by means of poison, or by lying in wait, or by any other kind of willful, deliberate and premeditated killing. 18 Pa.Cons.Stat.Ann. § 2502 (Purdon 1983).

conduct need not result in the ultimate criminal offense. *Commonwealth v. Bridges*, 475 Pa. 535, 539–541, 381 A.2d 125, 128 (1977). Rather, an accomplice is equally criminally liable for the acts of another if he acts "with the intent of promoting or facilitating the commission of an offense," and agrees or aids or attempts to aid such other person in either planning or committing the criminal offense. *Commonwealth v. Driver*, 343 Pa.Super. 13, 15–17, 493 A.2d 778, 779–80 (1985); *See also Commonwealth v. Everett*, 297 Pa.Super. 320, 327, 443 A.2d 1142, 1145 (1982); *Bridges*, 475 Pa. at 539–541, 381 A.2d at 128. Thus in the instant case, because the appellant has been convicted of murder of the first degree, the Commonwealth must have presented sufficient evidence to establish that he possessed the specific intent to facilitate the crime of murder.

■ The next step is to examine the actions of the accused to determine whether such actions rise to the level of criminal activity, such that the accused has promoted or facilitated the commission of the crime, and, thus, may be held responsible as an accomplice to another's acts and the consequences of such acts. *Commonwealth v. Vaughn*, 459 Pa. 35, 37–39, 326 A.2d 393, 394 (1974). In order to establish the appellant's guilt on an accomplice theory, no agreement is required. *Commonwealth v. Graves*, 316 Pa.Super. 484, 489–91, 463 A.2d 467, 470 (1983). Rather, the only requirement is that the accomplice have aided the principal. 18 Pa.Cons.Stat.Ann. § 306(b) (Purdon 1983). *Graves*, 316 Pa.Super. at 489–91, 463 A.2d at 470. It is well settled that this requirement is satisfied by "[t]he least degree of concert or collusion" between the accomplice and the principal. *Commonwealth v. Coccioletti*, 493 Pa. 103, 109, 425 A.2d 387, 390 (1981); *Commonwealth v. Mobley*, 467 Pa. 460, 463–64, 359 A.2d 367, 369 (1976); *Vaughn*, 459 Pa. at 38–39, 326 A.2d at 395; *Commonwealth v. Strantz*, 328 Pa. 33, 33, 195 A.2d 75, 75 (1937); *Rogers v. Hall*, 4 Watts 359, 361 (1835); *Graves*, 316 Pa.Super. at 489–91, 463 A.2d at 470 (1983).

Turning to the facts, in evaluating whether there was sufficient evidence to establish beyond a reasonable doubt that the appellant possessed the intent to promote or facilitate Cunerd's death, the evidence presented and the inferences which follow from that evidence must be viewed in the light most favorable to the Commonwealth as the verdict winner below. *Taylor*, 324 Pa.Super. at 422, 471 A.2d at 1229 (citations omitted). From this record there was sufficient evidence for the fact finder to reject the appellant's contention that he merely intended to beat up the deceased, and to instead find that based upon appellant's actions, he intended to facilitate the killing of Cunerd. Appellant suggests that because he testified to wanting merely to beat Cunerd up and not to kill him, and since there was no evidence to the contrary, that the Commonwealth has failed to carry its burden of proving intent. App. Brief 10. However, the Commonwealth did offer contrary evidence through the testimony of William Dales, who testified that approximately two days prior to Cunerd's death, appellant told him that he was going to kill Cunerd. Notes of Trial (N.T.) 103.[2] It is a firmly established principle of law that where conflicting evidence is presented, it is the fact finder's duty to assess the credibility of the proponents of such evidence. *Commonwealth v. Markle*, 475 Pa. 266, 269–70, 380 A.2d 346, 348 (1977); *Commonwealth v. Miller*, 375 Pa.Super. 437, 447–48, 544 A.2d 1000, 1005 (1988). It is clearly within the fact finder's province "to believe all, part, or none of the evidence presented." *Miller*, 375 Pa.Super. at 447–48, 544 A.2d at 1005 (citation omitted). The jury thus was free to disbelieve that portion of appellant's confession which suggested that he only intended to hurt Cunerd and not to facilitate his death. Viewed in this light, and based upon the additional evidence adduced at trial regarding the events which occurred on the evening of March 17, 1980, the fact finder could have found beyond a reasonable doubt that appellant entertained the intent to promote or facilitate Cunerd's death.

2. "N.T." refers to the notes of testimony followed by a page number.

■ We turn now to the second step of the analysis. The focus at this stage is whether appellant's conduct was sufficient to satisfy the mandates of accomplice liability delineated in the Crimes Code. It is also clear that the jury could have found beyond a reasonable doubt that appellant promoted or facilitated Cunerd's death by aiding or agreeing or attempting to aid Owens in the killing and thus satisfied the "least degree of concert or collusion" standard. *Coccioletti*, 493 Pa. at 109, 425 A.2d at 390. First, appellant admitted to knowing that earlier on the day of Cunerd's death, Owens had a knife with him. In addition, appellant admitted both to carrying a pen-gun in his pocket and to driving the car to the "Meadows," which was described during the trial as a desolate, deserted area. Also, based upon the murky details presented regarding the actual stabbing, it was never proven who actually stabbed Cunerd. But even assuming that Owens stabbed Cunerd, the jury could still have found that appellant drove Cunerd to the deserted area and stood by and watched as Owens stabbed Cunerd twenty-nine times. In addition, appellant admitted that after the stabbing he suggested going through Cunerd's pockets to see if they contained any fruits from the burglary. This suggestion is clearly contrary to appellant's testimony that he feared Owens and was shocked by his killing of Cunerd.

In addition, the record discloses several contradictions between appellant's first statement to the police, his second statement to the police, and his testimony at trial. These contradictions could have persuaded the fact finder to disbelieve appellant when he contended that he only intended to beat up Cunerd and was surprised that Owens killed him. Instead, the fact finder may have believed that all of appellant's actions were in an effort to bring Cunerd to the "Meadows" so that Owens would kill him.

Finally, appellant suggested that it was not until later that he realized that he had been set-up by Owens, and that it was probably Owens and Dales who had burglarized his

apartment. N.T. 249. This is clearly inconsistent with appellant's statement to police that he may have seen his wedding ring which was stolen from his home pulled out of Cunerd's pocket when Owen's searched through it. If one of appellant's rings was in Cunerd's pocket, it does not make sense that appellant would believe that Cunerd was not involved in the burglary.

Based upon the evidence adduced at trial, Dales' testimony, and the inconsistencies contained in appellant's statements and trial testimony, there was clearly sufficient evidence, albeit circumstantial, to prove beyond a reasonable doubt that appellant facilitated or promoted Cunerd's death by providing aid to Owens in that effort.

Appellant obtained new counsel for this appeal and now asserts that trial counsel provided ineffective representation regarding three areas of his case.

There are three elements to a valid claim of ineffective assistance. We inquire first whether the claim is of arguable merit; that is, whether the disputed action or omission by counsel was of questionable legal soundness. If so, we ask whether counsel had any reasonable basis for the questionable action or omission which was designed to effectuate his client's interest. If he did, our inquiry ends. If not, the appellant will be granted relief if he also demonstrates that counsel's improper course of conduct worked to his prejudice, i.e. had an adverse effect on the outcome of the proceedings.

*Commonwealth v. Davis*, 518 Pa. 77, 83–85, 541 A.2d 315, 318 (1988). *See also Commonwealth v. Pierce*, 515 Pa. 153, 527 A.2d 973 (1987); *Commonwealth v. Petras*, 368 Pa.Super. 372, 534 A.2d 483 (1987).

Appellant first argues that trial counsel should have objected to the trial judge's raising the accomplice liability theory *sua sponte* during a sidebar conference. Appellant contends that this untimely introduction of the accomplice theory prejudiced him by failing to provide him with ade-

quate notice to present a defense to the accomplice liability theory. Appellant asserts that because the Commonwealth's opening statement contained no mention of either accomplice liability or conspiracy, it is clear that the Commonwealth never intended to pursue these theories until the trial judge suggested this strategy during the sidebar conference. We find no merit in this argument.

It is well settled that a defendant may be convicted as an accessory though only charged as a principal. *Commonwealth v. Perkins*, 485 Pa. 286, 290–92, 401 A.2d 1320, 1322 (1979). In *Perkins*, Mr. Justice [later Chief Justice] O'Brien emphasized that distinctions between different standards of complicity are procedurally insignificant. *Id.*, 485 Pa. at 290–92, 401 A.2d at 1322 (citation omitted). It is clear that the Commonwealth's failure initially to proceed on the theory of accomplice liability does not later preclude a defendant's conviction under this theory. More recently, in *Commonwealth v. McDuffie*, 319 Pa.Super. 509, 466 A.2d 660 (1983), this court pointed out that as long as a defendant is put on notice that the Commonwealth may pursue theories of liability that link the defendant and another in the commission of crimes, the defendant cannot claim that the Commonwealth's pursuit of a theory surprised and prejudiced the defendant. *Id.*, 319 Pa.Superior Ct. at 513–15, 466 A.2d at 662.

Contrary to appellant's assertion, the Commonwealth's opening statements put appellant on notice that the Commonwealth might pursue the accomplice liability theory. In particular, the Commonwealth explained that appellant and Owens picked up the deceased, put him in a car, and jointly took him to the "Meadows" where he was stabbed twenty-nine times. N.T. 41. Clearly these statements put defendant on notice that an accomplice theory of liability was a viable alternative for the Commonwealth to pursue.

In addition, appellant has failed to support his contention that the trial judge's mention of accomplice liability during a sidebar conference surprised trial counsel or prejudiced appellant. In fact, just prior to the trial judge's

mention of the accomplice theory, it was appellant's counsel who implied that the Commonwealth was free to pursue one of three options, the first of which clearly implicates accomplice liability. Appellant's counsel noted:

> I think that the Commonwealth—and at this point the evidence before the jury, leaves one of three possibilities: one, that Owens did all the stabbing; two, Potts did the stabbing; or, three, they did it in concert.

N.T. 259. Clearly appellant's counsel, by explaining that the Commonwealth might proceed on the theory "that Owens did all the stabbing," and thus convict appellant not as the perpetrator, but as one who provided aid to the perpetrator, understood that the Commonwealth had the option and was even likely to seek a conviction based upon accomplice liability. These remarks by appellant's counsel, coupled with the Commonwealth's opening statement, clearly indicate that not only was appellant's counsel not surprised by the trial judge's mention of accomplice liability, but, indeed, that he was proceeding upon the assumption that the Commonwealth would pursue a conviction under this theory. Trial counsel's failure to object to the trial judge's mention of the accomplice liability theory was legally sound and thus was not of arguable merit as required by *Davis*.

As his second claim of ineffectiveness of counsel, appellant charges that trial counsel failed to preserve by postverdict motion the claim that evidence of defendant's prior bad acts should not have been introduced into evidence. Appellant argues that evidence that defendant had been in possession of marijuana was not relevant to the Commonwealth's case. Appellant contends that once such evidence was admitted, a cautionary instruction should have been given to the jury limiting the purposes for which such evidence could be utilized.

The first element of an ineffective assistance of counsel claim requires that appellant's contention be of "arguable merit." *Davis*, 518 Pa. at 83–85, 541 A.2d at 318 (1988). An analysis of this element requires this court to examine the admissibility of the challenged evidence.

Where a trial court has admitted evidence of other crimes or prior bad acts committed by a defendant, the scope of review is whether the trial court abused its discretion in admitting such evidence. *Commonwealth v. Dollman,* 518 Pa. 86, 89–91, 541 A.2d 319, 321; *Commonwealth v. Claypool,* 508 Pa. 198, 202–04, 495 A.2d 176, 178 (1985); *Commonwealth v. Green,* 351 Pa.Super. 170, 175–76, 505 A.2d 321, 324, *appeal denied,* 513 Pa. 633, 520 A.2d 1384 (1988). Generally, evidence of prior bad acts is inadmissible to prove a defendant's criminal character or propensity to act in a certain way. *Commonwealth v. Clayton,* 516 Pa. 263, 276–77, 532 A.2d 385, 392, *cert. denied sub nom., Clayton v. Pennsylvania,* 485 U.S. 929, 108 S.Ct. 1098, 99 L.Ed.2d 261 (1988). Generally, evidence of unrelated criminal acts of a defendant is inadmissible. *Green,* 351 Pa.Super. at 175–76, 505 A.2d at 324. Packel and Poulin, *Pennsylvania Evidence* § 405.1 (1987). However, there are six exceptions under which such evidence is admissible. These exceptions include when the evidence tends to establish (1) motive; (2) intent; (3) absence of mistake or accident; (4) a common scheme, plan, or design tending to connect the commission of two or more crimes; (5) the identity of the person charged with the crime; or (6) that the evidence is part of the same transaction as the case on trial. *Green,* 351 Pa.Super. at 175–76, 505 A.2d at 324; *Claypool,* 508 Pa. at 204–05, 495 A.2d at 179. To fit within the motive exception, the evidence "must give sufficient ground to believe that the crime currently being considered grew out of or was in any way caused by the prior set of facts and circumstances." *Commonwealth v. Schwartz,* 445 Pa. 515, 521–23, 285 A.2d 154, 158 (1971) (citations omitted).

■ In the case *sub judice,* it is clear that evidence that the decedent stole marijuana from the appellant's house fits within the motive exception. In his brief, appellant argues that evidence that money and jewelry were taken from his apartment by the decedent adequately establishes motive. Appellant contends that evidence that the decedent stole marijuana also does not add to his motive. However, evi-

dence that drugs were stolen provides the jury with increased grounds for believing that the defendant had a motive to kill Cunerd. Based on the evidence that drugs were involved, the jury could have inferred that this was a drug-related killing. This would have provided the appellant with a much stronger motive for killing Cunerd than would a burglary of money and jewelry alone. In addition, absent evidence regarding the presence of drugs in appellant's apartment, the jury may have believed that the appellant always had the option of reporting the burglary to the police and thus had no reason or motive to take matters into his own hands and kill Cunerd. However, the evidence establishing the presence of drugs could tend to show that the appellant could not go to police to report the burglary without implicating himself in criminal activity and thus was forced to take matters into his own hands and retaliate against the decedent. In either case, the trial court could have concluded that the motive for the murder was Cunerd's having stolen the marijuana from appellant and thus was relevant to motive.

█ Once relevancy has been established, evidence of a prior bad act is still inadmissible if its prejudicial effect outweighs its probative value. *Commonwealth v. Slyman*, 334 Pa.Super. 415, 437–39, 483 A.2d 519, 531 (1984). In balancing these competing concerns,

The trial court must weigh: "... on the one side, the actual need for the other-crimes evidence in the light of the issues and the other evidence available to the prosecution, the convincingness of the evidence that other crimes were committed and that the accused was the actor, and the strength or weakness of the other-crimes evidence in supporting the issue, and on the other, the degree to which the jury will probably be roused by the evidence to overmastering hostility."

*Commonwealth v. Shirey*, 333 Pa.Super. 85, 148–49, 481 A.2d 1314, 1348 (1984), (citing MCCORMICK (2d Ed.1972) at 453) *appeal after remand*, 343 Pa.Super. 189, 494 A.2d 420 (1985), *appeal denied*. We find that based upon these

factors, the trial court did not abuse its discretion in admitting evidence of the marijuana. As aforementioned, evidence that the appellant believed that the decedent stole marijuana from him may have strengthened appellant's motive for retaliation. In addition, appellant cannot criticize the strength and believability of the evidence because it was the appellant himself who had revealed to the police during post-arrest questioning that Cunerd had stolen marijuana from appellant's apartment. N.T. 134. The appellant would have little to gain by fabricating the existence of the marijuana, but a great deal to lose. In comparison, this evidence produced very little or no prejudicial effect. Clearly the appellant's possession of marijuana would not have persuaded the jury to convict the appellant of murder of the first degree. It is clear that the trial court did not abuse its discretion in admitting evidence of appellant's possession of marijuana into evidence.

Once evidence of a prior bad act is admitted into evidence, the trial judge, in his charge to the jury, must provide "a cautionary instruction which fully and carefully explains to the jury the limited purpose for which that evidence has been admitted." *Claypool*, 508 Pa. at 204–05, 495 A.2d at 179. *See also Commonwealth v. Billa*, 521 Pa. 168, 179–180, 555 A.2d 835, 841 (1989). This court has held that trial counsel's failure to request a cautionary instruction may present an arguable claim of ineffectiveness. *Commonwealth v. Gabrielson*, 370 Pa.Super. 271, 280–81, 536 A.2d 401, 405 *appeal denied*, 518 Pa. 636, 542 A.2d 1365 (1988). In the case *sub judice*, a cautionary instruction may have illustrated to the jury the proper light in which to view the evidence of the appellant's marijuana possession. Clearly appellant's claim that trial counsel failed to request a cautionary instruction is of arguable merit and satisfies the first element of an ineffectiveness claim.

The second element of an ineffectiveness claim is to consider whether counsel's omission was designed to effectuate his client's interest. *Davis*, 518 Pa. at 83–85, 541 A.2d at 318. Although it could be argued trial counsel chose not

to ask for a cautionary instruction because he did not want to draw more attention to his client's marijuana possession, this is a weak justification for the omission in light of the facts of the case. The Commonwealth introduced evidence of appellant's marijuana possession throughout the trial. It was not a fact that the jury was likely to forget. Thus, trial counsel's failure to request a cautionary instruction may have facilitated the jury's considering the evidence in assessing appellant's guilt of first degree murder, rather than limiting this evidence to its effect on motive. Clearly counsel's inaction could not have been designed to effectuate his client's interest.

 The third element of an ineffectiveness claim is to consider whether trial counsel's inaction prejudiced appellant to such a degree that it produced "an adverse effect on the outcome of the proceedings." *Davis*, 518 Pa. at 83–85, 541 A.2d at 318. In evaluating prejudice we are guided by the standard articulated by this court in *Commonwealth v. Groff*, 378 Pa.Super. 353, 372–73, 548 A.2d 1237, 1247 (1988). In *Groff* we stated that "the focus is on whether one can say with confidence that the jury would have returned a guilty verdict if counsel had provided effective representation." *Id.*, 378 Pa.Superior Ct. at 372–73, 548 A.2d at 1247. Based upon the facts presented at trial and the character of the evidence the appellant objects to, we can say that the jury would have convicted the defendant even if the trial judge had provided a cautionary instruction. As articulated above, the evidence against the appellant was substantial. The evidence adduced at trial establishes that appellant was instrumental in bringing the decedent to a deserted location where he was eventually murdered. In addition, appellant carried a weapon with him to that location and knew that Owens was also carrying a weapon. Finally, appellant declared his intention to kill the decedent several days before the killing. Clearly the jury would have returned a guilty verdict even with a cautionary instruction regarding the limited permissible use of the evidence of appellant's marijuana possession.

610

█ Appellant's last assignment of error is contained in a "Supplemental and Reply Brief" which was filed on May 23, 1989, two days prior to argument before this court. Pennsylvania Rule of Appellate Procedure 2113(a) precludes an appellant from raising a new issue in a reply brief. This rule provides that "the appellant may file a brief in reply to matters raised by appellee's brief not previously raised in appellant's brief...." Pa.R.App.P. 2113(a) (Purdon Supp. 1989). This rule limits an appellant's reply brief to those issues raised by appellee's brief and not addressed by appellant in its brief. This limitation, combined with appellant's failure to comply with Pennsylvania Rule of Appellate Procedure 2113(d), which provides that "No further briefs may be filed except with leave of court," Pa.R.App.P. 2113(d), precludes this court from addressing the issue appellant raises in his reply brief.

Judgment of sentence affirmed.

JOHNSON, J., concurs in the result.