603 A.2d 226

**BOROUGH OF GLENDON, Petitioner,**

v.

**DEPARTMENT OF ENVIRONMENTAL RESOURCES, Respondent.**

**GLENDON ENERGY COMPANY, Petitioner,**

v.

**DEPARTMENT OF ENVIRONMENTAL RESOURCES, Respondent.**

Commonwealth Court of Pennsylvania.

Argued Sept. 10, 1991.

Decided Jan. 28, 1992.

Petition for Allowance of Appeal Denied June 16, 1992.

240

Charles K. Elliott, for petitioner Borough of Glendon.

Peter Kryn Dykema and Joanne M. Scanlon for petitioner Glendon Energy Co.

Michelle Moses, Asst. Counsel, for respondent.

Before PALLADINO, and McGINLEY, JJ., and SILVESTRI, Senior Judge.

McGINLEY, Judge.

Before this Court are three consolidated petitions for review from orders of the Environmental Hearing Board (EHB) regarding the issuance by the Department of Environmental Resources (DER) of a conditional solid waste permit to the Glendon Energy Company (GEC) for the construction and operation of a resource recovery facility in the Borough of Glendon (Borough), Northampton County.

At 18 C.D.1991 this Court is called upon to review three matters. First, the Borough petitions for review of an EHB order at EHB Docket No. 90–104–F (Case 104 or GEC's appeal) issued December 4, 1990, which denied the Borough's petition to intervene in GEC's appeal regarding the application of Section 511(a) of the Municipal Waste Planning, Recycling and Waste Reduction Act (Act 101), Act of July 28, 1988, P.L. 556, 53 P.S. § 4000.511(a); second, at 18 C.D.1991, the Borough appeals from a December 4, 1990, EHB order at EHB Docket No. 90–100–F (Case 100 or Borough's appeal) which dismissed Objection No. 4 of the Borough's appeal of DER's issuance of the conditional solid waste permit to GEC; and third, is GEC's motion to quash the Borough's petition for review filed at 18 C.D.1991 on the basis that the denial of the Borough's petition for intervention and the grant of DER's summary judgment order entered at Case 104 are not final orders triggering

the Borough's right of appeal. Also in its motion to quash, GEC contends that the dismissal of the Borough's Objection No. 4 in Case 100 is interlocutory because the Borough's other thirty objections remain pending.

At 517 C.D.1991, GEC petitions for review of the EHB's grant of the DER's cross-motion for summary judgment in Case 104, which held that GEC's facility is a "new resource recovery facility" under Section 511 of Act 101.

A third petition for review, filed by the Borough on February 28, 1991 at 472 C.D.1991, is a protective appeal filed in response to GEC's motion to quash. This petition, seeking the same relief as the Borough's earlier petition filed at 18 C.D.1991, requests review of a subsequent EHB order entered February 7, 1991, in Case 104 dismissing GEC's appeal.

## Factual and Procedural History

On June 3, 1987, the Borough enacted Ordinance 87–1 which designated and authorized a site for the construction of the proposed facility. Ordinance 87–1 also authorized the execution of a host community agreement between the Borough and Energenics/Glendon, Inc. (EGI), GEC's predecessor. On December 2, 1987, the Borough enacted Ordinance 87–3 wherein the Borough consented to the assignment of EGI's rights and obligations under the host community agreement to GEC. In *Glendon Civic Association v. Borough of Glendon*, 132 Pa.Commonwealth Ct. 307, 572 A.2d 852, *petition for allowance of appeal denied*, 525 Pa. 660, 582 A.2d 326 (1990), this Court affirmed a common pleas court decision denying a challenge to the validity of Ordinances 87–1 and 87–3.

On February 26, 1988, GEC applied to DER for a solid waste management permit pursuant to the Solid Waste Management Act (SWMA)[1] and for approval of an air

1. Section 511 of Act 101 provides in pertinent part:
 (a) **General rule.**—The department shall not issue a permit for, nor allow the operation of, a new municipal waste landfill, a new commercial residual waste treatment facility or a new resource

pollution control plan pursuant to the Air Pollution Control Act (APCA).[2] DER accepted GEC's application as administratively complete on August 15, 1988. While GEC's application was pending, Act 101 became effective. In accordance with Section 511(a) of Act 101, DER required that GEC move the location of its proposed facility, a 500 ton per-day mass burn incinerator, to a spot more than 300 yards from the boundary between the Borough and the City of Easton. GEC subsequently complied with this request. Later in the application review process the Borough raised the issue of whether Glendon Woods, located in the Borough and less than 300 yards from the proposed incinerator site, is part of Heil Park. Although DER originally stated that Heil Park was entirely within the City of Easton, it subsequently determined that Glendon Woods, located approximately 700 feet from the site of GEC's proposed facility, is an "extra-territorial park" which belongs in fee to the City of Easton.

As a result, on February 5, 1990, DER issued Air Quality Permit Plan Approval No. 48–340–003 and Solid Waste Permit No. 101522 authorizing the construction and operation of the incinerator. However, GEC's solid waste permit included the following condition: "[b]efore construction of the facility can begin, a waiver of the isolation distance regarding Heil Park in the City of Easton must be obtained under Section 511 of Act 101." (Solid Waste Permit Condition No. 14).

On March 5, 1990, the Borough appealed to the EHB from the issuance of GEC's solid waste permit wherein the Borough objected (Objection No. 4), *inter alia*, to the issuance of the permit on the basis that the site limitation in

recovery facility within 300 yards of a building which is owned by a school district or a parochial school and used for instructional purposes, parks or playgrounds existing prior to the date the department has received an administratively complete application for a permit for such facilities. This subsection shall not affect any modification, extension, addition or renewal of existing permitted facilities.

53 P.S. § 4000.511(a).

**2.** Act of July 7, 1980, P.L. 380, *as amended,* 35 P.S. §§ 6018.101–6018.1003.

Section 511(a) prohibited its issuance without the required waiver. This appeal was docketed at EHB Docket No. 90–100–F (Case 100). On March 20, 1990, GEC filed a motion to dismiss Objection No. 4 in the Borough's appeal regarding the applicability of Section 511(a) to GEC's permit.

On March 6, 1990, GEC appealed to the EHB from the issuance of the permit alleging that DER erred in construing Section 511(a) to apply to its pending application for a solid waste permit and alternatively that if Section 511(a) does apply to GEC's permit application, it retroactively deprives GEC of substantive rights acquired under the prior law without due process. This appeal was docketed at EHB Docket No. 90–104–F (Case 104).

On March 28, 1990, the Easton City Council passed a resolution stating that it refused to waive the Section 511(a) limitation that forbids construction of an incinerator within 300 yards of park land. On April 10, 1990, the Borough petitioned the EHB to intervene in GEC's appeal on the basis that the Borough is the host community and as such has a substantial interest in the application and validity of the siting prohibition in Section 511(a). On April 10, 1990, the Borough also petitioned the EHB to consolidate its petition to intervene in Case 104 with GEC's motion to dismiss Objection No. 4 in Case 100.[3]

On May 4, 1990, GEC filed a motion for summary judgment asserting that Section 511(a) does not apply, and even if it does, that it is unconstitutional. DER filed a response to GEC's motion for summary judgment as well as its own cross-motion for summary judgment asserting that Section 511(a) is applicable to GEC's permit application and that it does not violate any of GEC's constitutional rights.[4]

On December 4, 1990, the EHB denied GEC's motion for summary judgment in Case 104 and granted DER's cross-

3. The EHB never ruled on the Borough's April 10, 1990, motion for limited consolidation.

4. The Borough also filed a cross-motion for summary judgment seeking the same relief on virtually the identical grounds as DER's motion for cross-motion summary judgment.

motion for summary judgment.[5] Also on December 4, 1990, the EHB denied the Borough's petition to intervene in Case 104. In Case 100, the EHB entered a December 4, 1990, order granting GEC's motion to dismiss the Borough's Objection No. 4.

On January 4, 1991, the Borough petitioned this Court for review of the EHB orders entered December 4, 1990. On February 1, 1991, GEC filed a motion to quash the Borough's petition for review on the basis that the orders denying intervention and the order granting DER's cross-motion for summary judgment in Case 104 were not final and that the order dismissing Objection No. 4 in Case 100 is interlocutory because the Borough's other 30 objections remain pending.

On February 7, 1991, the EHB granted GEC's motion to withdraw its remaining challenge, that Glendon Woods is not a park within the meaning of Section 511(a) and thus entered a final order dismissing GEC's appeal.[6] On February 22, 1991, this Court ordered that GEC's motion to quash be listed for argument with the merits. On February 28, 1991, in response to GEC's motion to quash, the Borough filed a protective appeal from the EHB's February 7, 1991 order dismissing GEC's appeal. On March 7, 1991, this Court entered an order consolidating the Borough's two petitions for review. On March 8, 1991, GEC appealed the EHB's order dismissing its appeal.

### Issues

Essentially, the Borough presents two issues for our review. The Borough contends that it has sufficient legally cognizable interests on behalf of itself and its citizens to intervene in GEC's appeal and to challenge the siting restrictions in Section 511(a) of Act 101, 53 P.S. § 4000.511(a);

---

5. The EHB did not rule upon the Borough's cross-motion for summary judgment.

6. The EHB denied GEC's motion to strike the Borough's briefs from the record despite the EHB's ruling denying the Borough's petition to intervene.

and that the Borough also has standing to raise a challenge to the solid waste permit issued by DER on the basis that the permit was issued in violation of the siting provisions of Section 511(a) of Act 101. In conjunction with these arguments the Borough also contends that the waiver provision in Section 511(d) of Act 101, 53 P.S. § 4000.511(d), does not limit the Borough's standing to intervene in GEC's appeal.

GEC also presents two issues for our review. GEC contends that the EHB erred by applying the 300–yard site limitation in Section 511(a) of Act 101 to GEC's pending application for its solid waste permit and alternatively, that if GEC's application must comply with Section 511(a) then vested rights will be retroactively extinguished in violation of GEC's due process rights. Also, in GEC's Reply Brief to DER's Respondent's Brief at 517 C.D.1991, GEC asserts that the waiver provision in Section 511(d) of Act 101 is an unconstitutional delegation of the police power.

### Borough's Appeal

The Borough contends that as "host municipality" it has standing to intervene in GEC's appeal to challenge the application of the 300–yard site limitation in Section 511(a) of Act 101 to GEC's permit. Specifically, the Borough contends that it and its citizens have sufficient interests affected by the location of GEC's incinerator within its borders so as to confer standing. For the same reasons, the Borough also alleges that it has standing in its own appeal to raise Objection No. 4 challenging the legality of DER's issuance of the permit without GEC obtaining a waiver of the site limitation.

Section 7514(e) of the Environmental Hearing Board Act, Act of July 13, 1988, P.L. 530, 35 P.S. § 7514(e) provides: "[a]ny interested party may intervene in any matter pending before the board [EHB]." In *William Penn Parking Garage v. City of Pittsburgh*, 464 Pa. 168, 346 A.2d 269 (1975), our Supreme Court stated that "one who seeks to challenge governmental action must show a *direct* and *substantial interest*.... In addition he must show a suffi-

ciently close causal connection between the challenged action and the asserted injury to qualify the interest as *'immediate'* rather than 'remote.' " *Id.*, 464 Pa. at 202, 346 A.2d at 286 (emphasis added).

In *Franklin Township v. Department of Environmental Resources,* 500 Pa. 1, 452 A.2d 718 (1982), the Supreme Court applied the substantial, direct, and immediate interest test set forth in *William Penn* as well as the "zone of interests to be protected" standard enunciated by the United States Supreme Court for standing in environmental cases in analyzing whether a municipality has standing to challenge the DER's issuance of a permit pursuant to the SWMA.

In *Franklin Township* the Supreme Court states:

On the federal level, where review of federal agency action is sought, the standing requirement has been broadened to include persons who can show 'that the challenged action had caused them 'injury in fact' and where the alleged injury was to an interest 'arguably within the zone of interests to be protected or regulated' by the statutes that the agency was claimed to have violated.' *Sierra Club v. Morton,* 405 U.S. 727, 92 S.Ct. 1361, 31 L.Ed.2d 636 (1972); Also see: *U.S. v. Students Challenging Regulating Agency Procedures,* 412 U.S. 669, 93 S.Ct. 2405, 37 L.Ed.2d 254 (1973).

The appellants, Franklin Township and Fayette County are legal persons in the sense that they exist as legal entities possessed of rights and responsibilities including the right and sometimes the duty to seek judicial or other legal relief. However, a township and a county are more than abstract entities; each is also a place populated by people. They can be identified by fixed and definable political and geographic boundaries. These boundaries encompass a certain natural existence—land, water, air, etc. collectively referred to as environment. Whatever affects the natural environment within the borders of a township or county affects the very township or county itself. Toxic wastes which are deposited in the land

irrevocably alter the fundamental nature of the land which in turn irrevocably alter the physical nature of the municipality and county of which the land is a part. It is clear that when land is changed, a serious risk of change to all other components of the environment arises. Such changes and threat of changes ostensibly conflict with the obligations townships and counties have to nature and the quality of life. We believe that the interest of local government in protecting the environment, which is part of its physical existence is 'substantial' within the meaning of 'substantial interest' as set forth in *Wm. Penn Parking Garage, supra.* Aesthetic and environmental well-being are important aspects of the quality of life in our society, and a key role of local government is to promote and protect life's quality for all of its inhabitants. Recent events are replete with ecological horrors that have damaged the environment and threatened plant, animal and human life. We need only be reminded of the 'Love Canal' tragedy and many like situations faced by communities and local governments across the county to recognize the substantial local concerns.

One of the most pressing public issues of the 1980's is the prudent establishment of waste treatment facilities and disposal sites. It is crucial that such sites be established in an efficient fashion, at a minimal cost of society, and within the framework of providing maximum protection of public health and property rights. This laudable and imperative goal can best be accomplished through the combined efforts of the citizenry and government. Cooperation between and among all who have an 'interest' in the environment is essential to achieve the aims of minimal cost and maximum protection.

We have found that the interest of local government in the natural surroundings is not insubstantial. We shall now consider whether the 'direct' and 'immediate' requirements of standing are satisfied in this case. In *Wm. Penn Parking Garage, supra.*, we said: 'The requirement that an interest be 'direct' simply means that the

person claiming to be aggrieved must show causation of the harm to his interest by the matters of which he complains.'

Changing the inherent character and quality of the environment by the introduction of toxic wastes into the land, amply provides local government units with an interest which is direct in every meaningful sense. The same considerations which led us to the conclusion that the interest of local government is the protection and enhancement of the quality of life of its citizens. Indeed, it is a constitutional charge which must be respected by all levels of government in the Commonwealth.

. . . .

The direct and substantial interest of local government in the environment, and in the quality of life of its citizenry cannot be characterized as remote. We need not wait until an ecological emergency arises in order to find that the interest of the municipality and county faced with such a disaster is immediate.

When a toxic waste disposal site is established, undoubtedly there is an instantaneous change in the land on which it is located, and an immediate risk to the surrounding environment and quality of life. These critical matters must be addressed by local government without delay. The environment which forms a part of the physical existence of the municipality or county has been altered and immediate attention must be given to the changed character if the local government is to properly discharge its duties and responsibilities. Furthermore, in the event of an environmental emergency, the local municipality and county would be the first line of containment and defense.

*Franklin Township*, 500 Pa. at 5–11, 452 A.2d at 720–722.

In the present case, GEC does not dispute that the Borough has standing to challenge the issuance of the solid waste permit. However, GEC's position is that enforcement of the site limitation in Section 511(a) rests with the owner of the park or playground located within 300 yards of

the facility and not DER or the municipality, as evidenced by the language of Section 511(d) of Act 101, 53 P.S. § 4000.511(d) which provides:

**Exemption by request.**—The current property owner under subsection (a) in which a new facility is proposed may waive the 300–yard prohibition by signing a written waiver, and, upon such request, the department shall waive the 300–yard prohibition and shall not use such prohibition as the basis for the denial of a new permit.

Therefore, GEC contends that the "zone of interests" protected by Section 511(a) are confined to the property owner and that if the property owner waives the site limitation then Section 511(a) cannot be used as the basis for the denial of the permit.

In applying the rationale in *Franklin Township* to the issuance of the permit, and also to the siting restriction in Condition No. 14 of the permit we must conclude that the Borough does have a substantial, direct and immediate interest and comes within the zone of interest protected by the siting prohibition in Section 511(a). Although the Borough is not the owner of Glendon Woods, it has jurisdiction over that property. The park, because of its proximity to the proposed incinerator, is at a heightened risk of contamination both to Borough residents who use the park, especially children and to the grounds of the park itself. The Borough is also responsible for providing protection as well as emergency services to those people who use the park.

Accordingly, we conclude that the Borough has such substantial, direct, and immediate interests, which clearly fall within the zone of interests protected by the site limitation in Section 511(a), to warrant standing before the EHB to participate in GEC's challenge to the application of Section 511(a) to its permit even though it is not the owner of the property.

In view of this conclusion, we must also hold that the EHB erred in granting GEC's motion to dismiss Objection No. 4 of the Borough's appeal. In Objection No. 4 the Borough alleges that DER's issuance of the solid waste

permit violates Section 511(a) because GEC had not obtained a waiver under Section 511(d) of the 300-yard siting limitation. *See* Borough's Reproduced Record (B.R.R.) at 7a.

Having held that the Borough has standing to participate in GEC's challenge to the application of Section 511(a) to its permit, we also conclude that the Borough has standing to challenge DER's issuance of the permit in light of the language in Section 511(a) prohibiting DER from issuing a permit to any new resource recovery facility located within 300 yards of a school, park or playground. Specifically, Section 511(a) of Act 101 states, "The department *shall not* issue a permit for ... a new resource recovery facility within 300 yards of ... parks or playgrounds existing prior to the date the department has received an administratively complete application for a permit for such facilities." 53 P.S. § 4000.511(a) (emphasis added).

The facts in the present case are undisputed. The location of GEC's proposed facility is within 300 yards of the Glendon Woods section of Heil Park, a park which existed prior to the date of GEC's permit application. The City of Easton, owner of the park, has refused to execute a waiver of the siting prohibition. As a result, we conclude that DER erred in issuing the solid waste permit to GEC.

Accordingly, we reverse the EHB's order granting GEC's motion to dismiss the Borough's Objection No. 4, and we sustain the Borough's appeal from DER's issuance of the permit. GEC's Solid Waste Permit No. 101-522 is hereby declared invalid as being issued in violation of Section 511(a) of Act 101.

### GEC's Motion to Quash the Borough's Appeal

GEC's motion to quash is also listed for disposition with the merits. On February 1, 1991, GEC filed a motion to quash the Borough's initial petition for review, filed with this Court at 18 C.D.1991, on the basis that the EHB order dismissing Objection No. 4 of the Borough's appeal as well

as the EHB order denying the Borough's petition to intervene in GEC's appeal are not final orders putting the Borough out of court.

As previously noted, on February 22, 1991, this Court entered an order listing the motion to quash for argument with the merits. However, on February 28, 1991, the Borough filed a second petition for review with this Court at 472 C.D.1991 as a "protective appeal" from the EHB's February 7, 1991, order dismissing GEC's appeal. As a result, our disposition of GEC's motion to quash the Borough's initial petition for review has no effect on the Borough's second petition for review.

Also, in response to the Borough's second petition for review, we have reversed the EHB's denial of the Borough's intervention on the basis that the Borough has standing to challenge the application of Section 511(a) to GEC's permit. In order to avoid piecemeal disposition,[7] we must also conclude that the EHB erred in dismissing Objection No. 4 in the Borough's appeal for the same reason that the Borough has standing to challenge the application of Section 511(a) to GEC's permit.

To summarize, we grant GEC's motion to quash the Borough's initial petition for review insofar as the Borough's appeal from the EHB's December 4, 1990, order partially dismissing GEC's appeal is not a final order. However, this has no effect on the disposition of the Borough's second petition for review. With regard to the Borough's appeal of the EHB's December 4, 1990, order dismissing the Borough's Objection No. 4, we deny GEC's motion to quash on the basis of our conclusion that the Borough has standing to assert the applicability of Section 511(a) to GEC's permit.

7. Also, as noted, the EHB has stayed proceedings on the remaining thirty objections in the Borough's appeal from the issuance of GEC's permit pending this Court's disposition of the Borough's appeal from the EHB order dismissing Objection No. 4 to the issuance of the permit.

*GEC's Appeal*

GEC first contends that the EHB incorrectly interpreted Act 101 by requiring compliance with Section 511(a). In the same vein, GEC contends that the EHB's interpretation of Act 101 violates the rules of statutory construction and leads to results that are contrary to the legislature's stated purposes.

■ GEC contends that under Section 502(c) of Act 101, 53 P.S. § 4000.502(c), its proposed facility is an "existing" facility and is protected under Section 502(*o*) of Act 101, 53 P.S. § 4000.502(*o*) and Section 303(a)(5) of Act 101, 53 P.S. § 4000.303(a)(5). GEC argues that Section 502(c) should be construed in harmony with Section 511(a), and as a result, GEC's facility is not a "new" facility subject to the 300–yard site limitation in Section 511(a). GEC maintains that the EHB erred in concluding that GEC's proposed facility is a "new" facility under Section 511(a) of Act 101 just because it does not possess a permit.

A review of Act 101 indicates that Section 502 deals exclusively with the duties of municipalities to prepare and submit ten-year waste management plans. Section 502(c) requires that the municipality's waste management plan identify and describe "existing" facilities. Section 502(c)(2) of Act 101, 53 P.S. § 4000.502(c)(2), states that existing facilities include

> resource recovery facilities for which the owner or operator of the facility has secured permanent bond financing for the facility or has signed an electric power contract with a public utility and such contract has been approved by the [Public Utility Commission].

53 P.S. § 4000.502(c)(2).

It is undisputed that GEC has secured permanent bond financing for its proposed incinerator and thus under Section 502 it must be considered an existing facility for purposes of a municipal waste management plan. However, DER contends that the criteria for determining "existing" facilities under Section 502(c) are limited and applicable

only to Section 502 and the regulation of municipal waste management plans. DER's position is supported by the language of Section 502(c) which states in pertinent part, *"For purposes of this subsection* existing facilities shall include: ...." (Emphasis added.) 53 P.S. § 4000.502(c). The plain language of Section 502(c) indicates that resource recovery facilities as described in Section 502(c)(2) (secured by permanent bond financing) are existing facilities only for the purposes of municipal waste management plans.

Likewise, Sections 502(*o*) and 303(a)(5) relate solely to municipal waste management plans. Section 502(*o*) prohibits county plans from interfering with the design, construction, operation, financing or contractual obligations of *municipal* processing or disposal facilities. 53 P.S. § 4000.-502(*o*). Section 303(a)(5) authorizes a county to prohibit the siting of additional resource recovery facilities within its boundaries. This section is inconsistent with the concept of a "grandfathered" county plan based upon a submission to DER prior to the effective date of Act 101 unless such facility qualifies as an existing facility under Section 502(c)(2) and is secured by permanent bond financing. This controversy does not involve any issues concerning municipal waste management plans, and we conclude Sections 502(*o*) and 303(a)(5) are inapplicable to GEC's proposed facility.

As a result, we need not look beyond the language of Section 511(a) to determine whether GEC's facility is a "new" or "existing" facility. Section 511(a) states, "The department [DER] shall not issue a permit nor allow the operation of ... a new resource recovery facility within 300 yards of ... parks or playgrounds existing prior to the date the department has received an administratively complete application for a permit for such facilities. This subsection shall not affect any ... *existing permitted facilities."* (Emphasis added.) 53 P.S. § 4000.511(a).

▮▮▮▮ Where the words of a statute are clear and free from all ambiguity, the letter of it is not to be disregarded under the pretext of pursuing its spirit. 1 Pa. 1921(b).

Only if a statute is unclear may a court embark upon the task of ascertaining the intent of the legislature by reviewing the necessity of the act, the object to be obtained, the circumstances under which it was enacted and the mischief to be remedied. 1 Pa. C.S. 1921(c); *Coretsky v. Board of Commissioners of Butler Township,* 520 Pa. 513, 517–518, 555 A.2d 72, 74 (1989). We must conclude that the language of Section 511(a) is clear and unambiguous. As a result, we need not apply the rules of statutory construction in order to obtain either the meaning of its words or the intent of the legislature in enacting it.

■ There is no dispute that Glendon Woods, a section of Heil Park, is located approximately 700 feet from the site of GEC's proposed facility. This is well within the 300–yard isolation distance required by Section 511(a). It is also undisputed that Glendon Woods existed as a park prior to August 15, 1988, when DER accepted GEC's permit application as administratively complete. On September 26, 1988, Section 511 of Act 101 became effective. At this time DER had not issued GEC a solid waste permit for its proposed facility. On February 5, 1990, DER issued Solid Waste Permit No. 101522 to GEC which contains Condition No. 14 and requires compliance with Section 511(a). GEC's proposed facility is a "new" facility subject to the site limitation and not an "existing permitted facility" within the meaning of the last sentence of Section 511(a).

GEC's second contention is that the application of the site limitation in Section 511(a) to its proposed facility is unconstitutional because it retroactively destroys vested rights in violation of GEC's due process rights. GEC argues that it has obtained, through a specially approved tax exempt bond offering, $42,000,000 for capital acquisition which must be redeemed if the project is scuttled. If this happens, GEC contends that it will lose $1,000,000 in finance costs. GEC also contends that it possesses a wide array of contract rights that would be forfeited at a cost of $2,500,000 if the facility is thwarted by the hurdles erected in Section 511(a).

Although we sympathize with GEC regarding any losses it may incur as a result of the application of Section 511(a), we believe a similar issue was reviewed in *R & P Services Inc. v. Department of Revenue*, 116 Pa. Commonwealth Ct. 230, 541 A.2d 432 (1988), where this Court noted:

Where, however, a condition triggering the application of the statute or regulation exists on its effective date, it cannot be said that the statute or regulation has been given retroactive operation merely because the substantive right it affects is claimed or asserted in an application or petition filed prior to its effective date.

*R & P*, 116 Pa.Commonwealth Ct. at 238, 541 A.2d at 435–436.

In the present case, Section 511(a) became effective while GEC's permit application was pending with DER. In accordance with *R & P*, we conclude that DER's application of Section 511(a) to GEC's permit does not constitute a retroactive application of the law and thus does not violate GEC's due process rights.

GEC also contends that the undisputed facts show that the application of Section 511(a) will produce inequities that the legislature did not intend. Therefore, GEC argues that this Court must consider the unreasonableness, inconvenience and injustice that results from the application of Section 511(a) to its proposed facility.

DER, on the other hand, contends that Section 511(a) is a legitimate exercise of the legislature's police power. As discussed above, GEC has not obtained a permit for its proposed facility at the time Section 511(a) became effective. Consequently, GEC had no vested right to construct its facility. Furthermore, our state Supreme Court has recognized that the constitutional protection of the obligation of contracts is necessarily subject to the police power of the state. Therefore, a statute passed as a legitimate exercise of the police power must be upheld, although it incidentally destroys existing contract rights. *DePaul v. Kauffman*, 441 Pa. 386, 399, 272 A.2d 500, 506–507 (1971).

Although we recognize that the application of Section 511(a) to GEC's project will result in financial hardship to GEC if the project is discontinued, we find that the EHB did not err in determining that the 300–yard site limitation in Section 511(a) applies to GEC's proposed facility.

 In response to assertions by DER and the Borough that Section 511(a) is a lawful exercise of the state's police power enacted to protect the public health, safety and welfare, GEC raises the issue, in its Reply Brief, of whether the waiver in Section 511(d) amounts to an unconstitutional delegation of the police power by delegating to playground or park owners the authority to waive the 300–yard site limitation. GEC maintains such a waiver provision bears no reasonable relationship to any public purpose and that the delegation in Section 511(d) to the City of Easton, as park owner, is arbitrary and unguided. But neither the Borough nor DER have challenged the constitutionality of Section 511(d). In *Commonwealth v. Potts*, 388 Pa.Superior Ct. 593, 566 A.2d 287 (1989), the Superior Court noted, "Pennsylvania Rule of Appellate Procedure 2113(a) precludes an appellant from raising a new issue in a reply brief.... This rule limits an appellant's reply brief to those issues raised by appellee's brief and not addressed by appellant in its brief." *Id.*, 388 Pa.Superior Ct. at 610, 566 A.2d at 296.

Furthermore, our review of the record indicates that GEC did not raise this issue either in its petition for review filed at 517 C.D. 1991 or in the Statement of Questions, Summary of Argument, or Argument sections of its Brief. Accordingly, we must conclude that this argument is not before us pursuant to Pa.R.A.P. 2116 which provides in pertinent part, "The statement of questions involved must state the question or questions in the briefest and most general terms.... This rule is to be considered in the highest degree mandatory, admitting no exception; ordinarily no point will be considered which is not set forth in the statement of questions or suggested thereby."

██ Even assuming *arguendo* that GEC timely raised the issue of whether Section 511(d) is an unconstitutional delegation of the police power, GEC has no standing to challenge the waiver provision since GEC cannot be adversely affected by it. In *Perrin's Appeal*, 305 Pa. 42, 156 A. 305 (1931), our Supreme Court, relying on the United States Supreme Court's decision in *Cusack v. City of Chicago*, 242 U.S. 526, 37 S.Ct. 190, 61 L.Ed. 472 (1916), noted:

> The Supreme Court justified the ordinance as a reasonable exercise of police power, stating that an adjoining owner may be benefitted by this provision, for without it the prohibition would be absolute, and one was not in any way injured by the fact that consent for the proposed use of his property was required, where such consent referred to offensive structures. The opinion states: 'The plaintiff in error cannot be injured, but obviously may be benefitted by this provision, for without it the prohibition of the erection of such billboards in such residence section is absolute. He who is not injured by the operation of a law or ordinance cannot be said to be deprived by it of either constitutional right or property.... The ordinance in the case at bar absolutely prohibits the erection of any billboards ... but permits this prohibition to be modified with the consent of the persons who are to be most affected by such modification.... This is not a delegation of legislative power, but is, as we have seen, a familiar provision affecting the enforcement of laws and ordinances.'

*Id.* 305 Pa. at 53–54, 156 A. at 308.

In the present case, Section 511(d) of Act 101, 53 P.S. § 4000.511(d), states, "The current property owner under subsection (a) in which a new facility is proposed may waive the 300–yard prohibition by signing a written waiver, and upon such request, the department shall waive the 300–yard prohibition and shall not use such prohibition as the basis for the denial of a new permit." GEC can only benefit from the City of Easton's waiver of the 300–yard site limitation. In accordance with *Perrin,* we conclude that GEC is pre-

cluded from challenging the constitutionality of Section 511(d).[8]

In view of the foregoing, we sustain the EHB's February 7, 1991 order dismissing GEC's appeal.

## ORDER

AND NOW, this 28th day of January, 1992, the Environmental Hearing Board's December 4, 1990 order, at EHB Docket No. 90–104–F, which denied the Borough of Glendon's petition to intervene, is reversed, albeit that reversal is inconsequential in light of the following dispositions.

The Environmental Hearing Board's February 7, 1991, order, at EHB Docket No. 90–104–F, which dismissed Glendon Energy Company's appeal is sustained.

The Environmental Hearing Board's December 4, 1990, order, at EHB Docket No. 90–100–F, which granted Glendon Energy Company's motion to dismiss the Borough of Glendon's Objection No. 4 is reversed, and the Borough of Glendon's appeal from the Department of Environmental Resources' issuance of Solid Waste Permit No. 101–522 is sustained. Solid Waste Permit No. 101–522 is hereby declared invalid as being issued in violation of Section 511(a) of the Municipal Waste Planning, Recycling and Waste Reduction Act, 53 P.S. § 4000.511(a).

Glendon Energy Company's motion to quash the Borough of Glendon's petition for review filed at 18 C.D. 1991 is granted with regard to the Borough's appeal of the Environmental Hearing Board's December 4, 1990, order at

8. If the validity of Section 511(d) were properly before this Court, and we found it to be an unconstitutional delegation of the police power, which we do not find, pursuant to Section 1925 of the Statutory Construction Act of 1972, 1 Pa.C.S. § 1925, it may be severed from the rest of the statute unless the court finds that the remaining valid provisions are essentially and inseparably connected with the invalid provision. *See Commonwealth v. Liquor,* 46 Pa.Commonwealth Ct. 490, 407 A.2d 83 (1979). It is our opinion that Section 511(a) would stand alone as a proper exercise of the police power rationally-related to the protection of individuals, especially young children, likely to use parks or playgrounds located within 300–yards of landfills, waste treatment facilities and resource recovery facilities.

EHB Docket No. 90–104–F and is denied with regard to the Borough of Glendon's appeal of the Environmental Hearing Board's December 4, 1990 order dismissing Objection No. 4 at EHB Docket No. 90–100–F.