James NEWELL, Appellant,

v.

## WILKES–BARRE AREA VOCATIONAL TECHNICAL SCHOOL.

Commonwealth Court of Pennsylvania.

Argued Dec. 4, 1995.

Decided Jan. 25, 1996.

Charles L. Herring, for Appellant.

Michael T. Toole, for Appellee.

Before FRIEDMAN and KELLEY, JJ., and LORD, Senior Judge.

FRIEDMAN, Judge.

James Newell (Newell) appeals from an order of the Court of Common Pleas of Lu-

zerne County (trial court) which dismissed his Petition for Review of an adjudication of the Joint Operating Committee (JOC) of the Wilkes–Barre Area Vocational–Technical School (WBAVTS) sustaining Newell's suspension from his employment as a teacher at WBAVTS. We affirm.

WBAVTS is an area vocational-technical school jointly owned and operated by five member school districts. The school boards of at least four out of the five participating districts must approve WBAVTS' yearly budget; however, two district boards disapproved the 1993–94 proposed budget, at least one of which on the grounds that WBAVTS was overstaffed as a result of declining student enrollment. The Administrative Director of WBAVTS, Dr. Thomas F. O'Donnell, Jr., reviewed enrollment data and decided that there had been a substantial overall decrease in student enrollment at WBAVTS and, in particular, a decrease in enrollment in certain classes, including Newell's Consumer Electronics course. Based upon the decrease in class enrollment, and upon similarities between Consumer Electronics and another course, Electronic Technology, Dr. O'Donnell recommended to the JOC at its special meeting on June 8, 1993 that the two courses be merged. The JOC unanimously concurred and approved the recommendation. On June 25, 1993, Dr. O'Donnell sent the Department of Education a copy of the minutes of the meeting, requesting approval of the course merger in accordance with section 339.4(f) of the Vocational Education Standards, 22 Pa.Code § 339.4(f).[1]

Because he was the teacher with least seniority, Newell was chosen to be suspended. The JOC notified Newell by letter, dated July 6, 1993, that unless prohibited by the Secretary of Education, the electronics courses would be combined as of the beginning of the 1993–94 school year. (R.R. at 82a.) Newell requested and received a hearing to determine the legitimacy of his sus-

1. Section 339.4(f) of the Vocational Education Standards provides as follows:
 *Terminations.* Before program termination the local administrator shall secure board approval and forward a copy of the board's min- utes with a letter of explanation to the Department. If the Department does not respond to the school entity's submission within 60 days, the termination shall be considered approved. 22 Pa.Code § 339.4(f).

pension, and, on November 28, 1994, Newell was notified that the JOC had affirmed his suspension. Newell petitioned the trial court for review of this adjudication; the trial court dismissed the Petition, holding that Newell's suspension was proper under both section 1124(1) and section 1124(2) of the Public School Code of 1949 (School Code), Act of March 10, 1949, P.L. 30, *as amended,* 24 P.S. §§ 11–1124(1) & (2).[2]

■ On appeal to this court,[3] Newell first argues that his suspension was improper under section 1124(1) of the School Code because: (1) there had been an increase in student enrollment at the time Newell was suspended; and (2) the computation of a cumulative decrease in enrollment was based upon an unreasonable time period.[4]

■ In determining whether there has been a decline in student enrollment, school boards must exercise discretion; board action will not be disturbed absent a showing that such discretion was abused, or that the action was arbitrary, based on a misconception of law or ignorance of facts. *Phillippi v.*

*School District of Springfield Township,* 28 Pa.Cmwlth. 185, 367 A.2d 1133 (1977). Here, the JOC's determination was proper.

■ In *Colonial Education Association v. Colonial School District,* 165 Pa.Cmwlth. 286, 645 A.2d 336 (1994), *appeal denied,* 539 Pa. 696, 653 A.2d 1234 (1994), this court reiterated the methods available to establish declining enrollment. We stated:

> There are two means by which [a] Board can prove substantial decrease in enrollment to justify [a teacher's] suspension. First, the Board may present evidence of a general cumulative enrollment decline over a reasonably justifiable period of time. Second, the Board may present evidence of a decrease in enrollment from one year to the next that is so prominent as to not require the inclusion of the statistics of additional years.

*Id.* at 338. Because, following years of declining numbers, enrollment increased during the two years prior to Newell's suspension (1991–92 and 1992–93),[5] we agree with New-

---

**2.** Section 1124 of the School Code provides in pertinent part:

> Any board of school directors may suspend the necessary number of professional employes, for any of the causes hereinafter enumerated:
> (1) Substantial decrease in pupil enrollment in the school district;
> (2) Curtailment or alteration of the educational program on recommendation of the superintendent, concurred in by the board of school directors, approved by the Department of Public Instruction, as a result of substantial decline in class or course enrollments or to conform with standards of organization or educational activities required by law or recommended by the Department of Public Instruction;

24 P.S. §§ 11–1124(1) & (2).

**3.** Our scope of review is limited by section 754(b) of the Local Agency Law, 2 Pa.C.S. § 754(b). We are required to affirm the action of the JOC unless we find a violation of Newell's constitutional rights, an error of law or manifest abuse of discretion by the JOC or that any necessary finding of fact made by the JOC is not supported by substantial evidence. *Colonial Education Association v. Colonial School District,* 165 Pa.Cmwlth. 286, 645 A.2d 336 (1994), *appeal denied,* 539 Pa. 696, 653 A.2d 1234 (1994).

**4.** At oral argument, Newell's counsel also asserted that section 1124(1) of the School Code is

inapplicable to WBAVTS because WBAVTS is not a "school district." Although section 1124(1) of the School Code refers to decreases within a "school district," we believe that such phrase does not exclude a vocational-technical school such as this, the budget and student body of which is drawn from multiple districts, yet functions as a conglomerate district itself with an independent Joint Operating Committee, board of directors and superintendent. This reasoning is supported by *Greater Johnstown Area Vocational–Technical School v. Greater Johnstown Area Vocational–Technical Education Association,* 520 Pa. 197, 553 A.2d 913 (1989), in which a teacher was furloughed from the vocational-technical school due to declining enrollment. Although *Greater Johnstown* cites no other statutory or case law specifically applicable to the situation before us, it appears that section 1124(1) is controlling in the absence of a conflicting collective bargaining agreement. *See Ringhoffer v. Bethlehem Area Vocational Technical School,* 38 Pa.D. & C. 3rd 188 (1985).

**5.** The parties are in agreement that enrollment at WBAVTS from the 1977–78 school year through the 1992–93 school year, the last year in which Newell taught at WBAVTS, was as follows:

| School Year | School Enrollment |
|---|---|
| 1977–78 | 1651 |
| 1978–79 | 1554 |
| 1979–80 | 1496 |
| 1980–81 | 1484 |

ell that WBAVTS may not use the second method to show a substantial decrease in enrollment. However, WBAVTS can prove such a decrease under the first calculation method as long as the cumulative decrease in pupil population has occurred over a reasonable time period. *Id.* Therefore, the relevant question is whether the JOC based its determination of substantial decrease in student enrollment upon a reasonable time period.

■ Newell alleges that WBAVTS' use of a sixteen-year period, (1977–78 to 1992–93), to show a substantial enrollment decline was unreasonable. WBAVTS counters, asserting that the JOC and the trial court both relied upon a ten-year period, (1982–83 to 1992–93), not sixteen, to examine the enrollment decline.[6] Moreover, WBAVTS contends that, although ten years is a reasonable time frame, a cumulative decline sufficient to justify Newell's suspension could be established in fewer years.[7]

Although ten years is at the outer limits of a reasonably justifiable period, we allowed the use of a ten-year period to compute student decline in *Smith v. Board of School Directors of Harmony Area School District,* 16 Pa.Cmwlth. 175, 328 A.2d 883 (1974). In *Smith,* we held that a net loss of 114 students, representing 16% of the 724 students initially enrolled in the school district, was

| School Year | School Enrollment |
| --- | --- |
| 1981–82 | 1418 |
| 1982–83 | 1388 |
| 1983–84 | 1363 |
| 1984–85 | 1283 |
| 1985–86 | 1212 |
| 1986–87 | 1133 |
| 1987–88 | 1047 |
| 1988–89 | 968 |
| 1989–90 | 904 |
| 1990–91 | 807 |
| 1991–92 | 866 |
| 1992–93 | 880 |

(R.R. at 87a.)

6. Because we agree that WBAVTS could establish a substantial enrollment decline using less than a ten-year period, we need not consider whether the JOC and the trial court used a sixteen-year or a ten-year time period for their determination.

7. We have permitted school boards to view declining enrollment over a period of years to determine substantiality of the enrollment decline.

substantial. In *Bachak v. Lakeland School District,* 665 A.2d 12 (Pa.Cmwlth.1995), however, we held that the school district's use of a ten-year period was not justified, reasoning, in part, that a ten-year period was not reasonable where use of that time period resulted in a 20% decline in a student enrollment of 2,000, while use of a seven-year time frame yielded a decline of only 4.4%.

Newell argues that, because the circumstances of his suspension more closely resemble those present in *Bachak,* use of the ten-year period was not reasonable; WBAVTS argues that the relatively small size of the district and the overall trend of declining enrollment makes the analysis in *Smith* more appropriate. We base our determination on both *Smith* and *Bachak.*

The size of WBAVTS' student enrollment lies somewhere between that of the districts in *Smith* and *Bachak.* Using the ten-year period prior to Newell's suspension, we note that WBAVTS had an actual loss of 508 students, representing a 36.6% decline. Clearly, although the size of the district here was greater than that in *Smith,* and smaller than in *Bachak,* the enrollment loss in terms of actual numbers and percentages was considerably greater than existed in either of those cases. Therefore, Newell's suspension from WBAVTS was consistent with both *Smith* and *Bachak.*[8]

Time standards we have accepted as reasonable include ten years, *Smith v. Board of School Directors of Harmony Area School District,* 16 Pa. Cmwlth. 175, 328 A.2d 883 (Pa.Cmwlth.1974); seven years, *Platko v. Laurel Highlands School District,* 49 Pa.Cmwlth. 210, 410 A.2d 960 (1980); five years, *Andresky v. West Allegheny School District,* 63 Pa.Cmwlth. 222, 437 A.2d 1075 (1981), and *Phillippi v. School District of Springfield Township,* 28 Pa.Cmwlth. 185, 367 A.2d 1133 (1977); and three years, *Mongelluzzo v. School District of Bethel Park,* 93 Pa.Cmwlth. 557, 503 A.2d 63 (1985).

8. Moreover, in contrast to *Bachak,* even if we use a lesser time frame for the calculation, we still see a substantial enrollment decline. For example, over the seven years prior to Newell's suspension, enrollment declined 27%, and an examination of a five year period reveals a 15.95% decline. These figures provide substantial evidence to support a finding that there had been a substantial overall decrease in enrollment over a reasonable amount of time.

Based upon the enrollment data and upon the testimony of Dr. O'Donnell,[9] the trial court found that there was substantial evidence to support the JOC's decision to suspend Newell pursuant to section 1124(1) of the School Code. We agree and affirm the order of the trial court.[10]

### ORDER

AND NOW, this 25th day of January, 1996, the order of the Court of Common Pleas of Luzerne County, dated May 7, 1995, is affirmed.

Furthermore, when the enrollment figures and decline percentages from WBAVTS are compared to those from other cases in which we have affirmed suspensions, it is clear that, comparing the declines over the same number of years, the WBAVTS' decline was significantly greater. Over a seven year period, enrollment in *Platko* decreased by 13%; WBAVTS suffered a 27.4% decrease over seven years. In *Phillippi*, enrollment declined by 11.74% over six years; WBAVTS' enrollment slipped by 22.3% in that same period. We held that an 11% decline over five years was sufficient in *Andresky*; here, in five years, student population at WBAVTS decreased by 15.95%.

9. When asked about his conclusions from his review of enrollment data for previous years, Dr. O'Donnell responded as follows:

Well, the enrollment, over a period of, from '77 onward, has gone down. There are little ups and little downs in it, but overall, it went down.

(R.R. at 26–27a.)

10. Newell also asserts that his suspension was improper under section 1124(2) of the School Code because WBAVTS did not have timely approval from the Department of Education for the merger of the electronics courses; however, based upon our finding that there was substantial evidence for the trial court's conclusion that Newell's suspension was proper under section 1124(1) of the School Code, we need not address whether the suspension was also proper under section 1124(2). *Mongelluzzo v. School District of Bethel Park*, 93 Pa.Cmwlth. 557, 503 A.2d 63 (1985).