Carolyn **SHEGELSKI** and Mary Rose Grochowski, Appellants,

v.

## MID VALLEY SCHOOL DISTRICT.

Commonwealth Court of Pennsylvania.

Argued April 16, 1996.

Decided June 3, 1996.

---

Charles L. Herring, for Appellants.

Joseph F. Gaughan, for Appellees.

Before SMITH, PELLEGRINI, JJ., and NARICK, Senior Judge.

NARICK, Senior Judge.

Before this Court is an appeal from the order of the Court of Common Pleas of Lackawanna County (trial court) affirming an adjudication by the Board of School Directors of the Mid Valley School District (Board) to suspend Dr. Carolyn Shegelski and Ms. Mary Rose Grochowski (Appellants) from their teaching positions in the business education program as a result of a substantial decline in course enrollment.

The suspensions at issue, pursuant to Section 11–1124(2) of the Public School Code of 1949 (Code),[1] occurred on December 19, 1992. However, Dr. Shegelski was first suspended for the 1991–1992 school year. She requested and was granted a hearing before a local agency hearing examiner, and an adjudication was issued affirming the suspension. The Board affirmed and Dr. Shegelski appealed the adjudication to the trial court, which reversed per order and opinion filed on November 30, 1992 by the Honorable Carlon M. O'Malley. He ruled that when the Mid Valley School District (District) eliminated classes and sections because of a decline in enrollment, this constituted a curtailment of the educational program which to be valid must be approved by the Department of Public Instruction, now called the Department of Education (DOE). Because the District failed to obtain that approval, the suspension was held invalid and the District was ordered to reinstate Dr. Shegelski with back pay. Back pay was paid to Dr. Shegelski, but she was not reinstated as per Judge O'Malley's order.

A similar situation arose with Ms. Grochowski's suspension, except that she was notified of her suspension on June 30, 1992, and after a hearing in October, 1992, she was granted back pay, because, like Dr. Shegelski, her suspension had not been approved by the DOE. In her case, however, no adjudication was ever issued by the hearing examiner, and consequently no appeal was taken to trial court.

Following the November 30, 1992 reversal of Dr. Shegelski's first suspension, the District sought and received permission from the DOE to alter or curtail the business education program. Following DOE approval, the District again suspended Appellants, and again held hearings at Appellants' request. The Board upheld the suspensions, and this time the trial court affirmed the Board, per opinion and order of the Honorable James M. Munley.

On appeal, Appellants raise two issues for our review: (1) whether the trial court erred by affirming Appellants' suspensions when

1.  Act of March 10, 1949, P.L. 30, *as amended,* 24 P.S. § 11–1124.

there was no evidence of a current decline in course enrollment, and (2) whether Appellants' due process rights were violated when the Board first suspended Appellants and then acted in an adjudicatory role in reviewing the propriety of their suspension.

■ As regards the first issue, Appellants first cite *Bristol Township School District v. Karafin*, 508 Pa. 409, 498 A.2d 824 (1985), for the propositions that: (1) the correct time to determine whether a suspension, which is based on a decline in student enrollment, is warranted is at the time the suspension was effective, and, (2) evidence from the prior year of declining enrollment was insufficient to predict the enrollment or the District's need for the teachers in a future year. Appellants claim that because the courses they taught had already been curtailed at the time of their second suspension, there was no evidence of a current decline, and thus the suspensions must be deemed void.

We find no merit to this argument for several reasons. First, Appellants misconstrue *Karafin*. In *Karafin*, the teachers were told that they would be suspended at the end of the 1980–1981 school year as a result of the closing of the high school. The teachers, who had accumulated ten years of satisfactory service, requested sabbatical leave for that year, but the school board refused. The board argued, *inter alia*, that because, pursuant to Section 1166 of the Code,[2] only persons employed by the school system qualified for sabbatical leave, and because the teachers had been suspended, the teachers were not employed by the system, and were not entitled to take their sabbaticals. The *Karafin* court rejected this argument and held that even though the closing of the high school was the reason for the teachers' suspension, and the chances of employment with the district upon return from their sabbaticals were slim, nonetheless, the teachers remained employees until they returned from their sabbaticals. Then, once the teachers returned, the determination would be made whether conditions warranted a suspension. The Supreme Court stressed that teachers who have worked long enough and performed in a satisfactory manner should not be deprived of their sabbatical leaves, a right that was given to them by the legislature.

Thus, *Karafin* held that teachers could not be suspended just prior to their sabbatical leaves. However, after such leaves, if declining enrollment so warranted, the suspensions could take place. *Karafin* does not hold that evidence of the prior year of declining enrollment may not be used to predict the enrollment or the district's need for the teachers in a future year. In fact, any orderly scheduling of classes would require that the school decide which courses will be offered before the beginning of the school year, and thus, the only evidence available for determining which classes would be curtailed in the upcoming year would be evidence of enrollments from one or more previous years.

Here, the figures from the course selection surveys established that enrollment in the District's business program decreased steadily over three successive school years, from 1990–1991 to 1992–1993. Enrollments in nine of the thirteen business classes decreased by at least twenty percent, and thirteen of fifteen potential business class sections (some classes had more than one section) had fewer than ten students enrolled for the 1992–1993 school year.

Appellants claim that when the DOE and the Board voted in December, 1992 to curtail their courses, thus forcing their suspension for the second time, such action was invalid because there was no determination, at the effective time of suspension, that there was a decline in enrollment. They claim that for the Board's decision to be based on current evidence, the Board would have had to reissue the 1992–1993 student course selection surveys after learning of Judge O'Malley's November 30, 1992 decision reversing Appellants' initial suspensions, and would have had to include in those surveys Appellants' subsequently curtailed classes. Otherwise, their suspensions would be invalid because they were not based on *current* evidence of a decline in enrollment. We disagree.

2.  24 P.S. § 11–1166.

We do not believe that the Board was required to disrupt the normal process of course selection when the decision to curtail the business program for the 1992–1993 school year was based on the most current student course selection surveys which were distributed to the students in the Spring of the 1991–1992 school year as part of the normal process of course selection for the upcoming year. The surveys included the entire business program curricula, including those courses taught by Appellants. Thus, Appellants' courses were offered in the Spring of 1992, but because of lack of student interest they were not scheduled for the 1992–1993 school year. Therefore, at the time of Appellants' second suspensions, the curtailment of Appellants' courses was based on the most current data gathered in the ordinary process of developing course schedules. This evidence showed declining student enrollment in the program, and specifically in the courses taught by Appellants.

As we stated in *Penzenstadler v. Avonworth School District,* 43 Pa.Cmwlth. 571, 403 A.2d 621, 623 (1979):

> whether or not a decline in class enrollments necessitates a curtailment of the educational program "is an area in which school boards must exercise discretion and board action will not be disturbed absent a showing that such discretion was abused, or that the action was arbitrary, based on a misconception of law or ignorance of the facts." *Phillippi v. School District of Springfield Township,* 28 Pa.Cmwlth. 185, 367 A.2d 1133, 1137 (1977).

Because we find that the course curtailment and the subsequent suspension of Appellants was based on current evidence of declining class enrollment, we hold that the Board's action in suspending Appellants was not arbitrary, nor did it constitute an abuse of discretion or an error of law.

█ Next, Appellants argue that their due process rights were violated by the procedure in which the Board first suspended Appellants and then acted in an adjudicatory role in reviewing the propriety of the suspensions. Appellants cite *Lyness v. Pennsylva-*

*nia State Board of Medicine,* 529 Pa. 535, 605 A.2d 1204 (1992), and *Copeland v. Township of Newtown,* 147 Pa.Cmwlth. 463, 608 A.2d 601 (1992), in support of their argument that the Board impermissibly commingled its prosecutory and adjudicatory functions thereby creating the potential for bias and the appearance of non-objectivity which is a fatal defect under the Pennsylvania Constitution.

However, this precise question was very recently addressed in *Krupinski v. Vocational Technical School, Eastern Northampton County,* —— Pa. ——, 674 A.2d 683 (1996). The Supreme Court held that the suspension of a teacher as a result of declining enrollments pursuant to section 1124(2) of the Code[3] was nondisciplinary in nature. Unlike the disciplinary action taken by the Board of Medicine in *Lyness,* the teacher's suspension was not based on any charges stemming from some action or inaction by her, and in approving the elimination of her courses and her position, the board was not acting in a prosecutorial capacity. Thus, the *Krupinski* court held that the potential for bias from the commingling of prosecutorial and adjudicatory roles, as was the concern in *Lyness,* was not present in the appeal. Because the Supreme Court's decision in *Krupinski* is directly on point and thus controls our determination of this issue, we hold that there is no merit to Appellants' due process argument.

Accordingly, we affirm the order of the trial court denying Appellants' petitions for review of their suspensions.

### ORDER

AND NOW, this 3rd day of June, 1996, the order of the Court of Common Pleas of Lackawanna County in the above-captioned matter is hereby affirmed.

---

**3.** 24 P.S. § 11–1124(2).