Nancy BATTAGLIA, Petitioner,

v.

LAKELAND SCHOOL DISTRICT, Respondent.

Patricia MUSSARI, Petitioner,

v.

LAKELAND SCHOOL DISTRICT, Respondent.

Commonwealth Court of Pennsylvania.

Argued Feb. 5, 1996.

Decided June 10, 1996.

Charles L. Herring, for Petitioners.

Michael F. Cosgrove, for Respondent.

Before DOYLE, PELLEGRINI and KELLEY, JJ.

DOYLE, Judge.

Nancy Battaglia, a certified secondary art teacher, and Patricia Mussari, a certified

school nurse, appeal from two separate orders of the Secretary of Education, which upheld the decision of the Board of School Directors (Board) of the Lakeland School District (District) demoting them from full-time to half-time status based on declining enrollment.[1]

### I. Background

The relevant facts are undisputed, having been stipulated to by the parties. Prior to the 1991–1992 school year, Battaglia was employed full-time by the District as a secondary art teacher and Mussari was employed full-time by the District as a school nurse. During the ten year period commencing with the 1981–1982 school year and ending with the 1990–1991 school year, the District's enrollment declined from a peak enrollment of 2,002 students in the 1981–1982 school year to 1,606 students in the 1990–1991 school year. The District's enrollment was thereby reduced by a total of 396 students during this ten-year period, a reduction of approximately twenty percent of its pre–1981 student population.

The impact of the District's declining enrollment was felt to an even greater degree at the secondary level (grades 7 through 12) where the student population decreased from a peak of 988 students in the 1981–1982 school year to 746 students in the 1990–1991 school year. Furthermore, the number of secondary students receiving art instruction fell from 374 to approximately 268 during this same time period, a decrease of almost thirty percent.

In the Spring of 1991, based on the declining enrollment in the District over the previous ten years, the District's Superintendent recommended that the Board adopt various changes in the District's educational programs. As part of his recommendation to the Board, the Superintendent proposed that several professional employees be suspended or demoted. On July 3, 1991, the Board adopted a resolution enacting personnel changes based on the District's declining enrollment and the Superintendent's recommendations pursuant to its authority under Section 1124 of the Public School Code of 1949 (School Code).[2] Section 1124 of the School Code specifically provides as follows:

Any board of school directors may suspend the necessary number of professional employes, for any of the causes hereinafter enumerated:

(1) Substantial decrease in pupil enrollment in the school district;

(2) Curtailment or alteration of the educational program on recommendation of the superintendent, concurred in by the board of school directors, approved by the Department of Public Instruction, as a result of substantial decline in class or course enrollments or to conform with the standards of organization or educational activities required by law or recommended by the Department of Public Instruction;

. . . .

Under the terms of the Board's resolution, Battaglia was demoted from her full-time position as a secondary art teacher to a half-time position; Mussari was likewise demoted from her full-time position as a school nurse to a half-time position.

Both Battaglia and Mussari requested a timely hearing before the Board.[3] On February 19, 1992, the Board held a hearing at which Battaglia argued that the Board's decision was flawed since enrollment had actually increased during the 1991–1992 school year.[4]

---

1. On May 3, 1995, Battaglia and Mussari filed separate petitions for review with this Court. Battaglia's appeal was docketed at No. 1098 C.D. 1995; Mussari's appeal was docketed at No. 1099 C.D. 1995. Since these two appeals share a similar factual history and involve closely related questions of law, we consolidated them for disposition before this Court by an order dated July 13, 1995.

2. Act of March 10, 1949, P.L. 30, *as amended,* 24 P.S. § 11–1124.

3. On January 2, 1992, Mussari was reinstated to a full-time position for reasons unrelated to the issues involved in the present appeal. However, Mussari has continued to pursue her case before the Board, the Secretary of Education, and this Court in order to recover back pay for the period in which she was demoted to half-time status.

4. The District admits that enrollment actually did increase, from 1606 in the 1990–1991 school year to 1631 in the 1991–1992 school year. However, the Board's decision was made in July of 1991, prior to the 1991–1992 school year.

Battaglia further alleged that the Board's action was arbitrary and capricious, since there had not been a "substantial" decline in enrollment over a reasonable period of time as required by Section 1124 of the School Code. In regard to the Board's specific assertion that the enrollment in art classes had undergone a marked decline over the past ten years, Battaglia argued that any such decline was not the result of diminished interest in the art program, but instead was primarily caused by the District's decision to curtail the number of art courses offered to students. Nevertheless, the Board rejected these arguments, finding that it had properly exercised its discretion when it demoted Battaglia to half-time status.[5]

Mussari, for her part, further contended that the Board's action violated Section 1402 of the School Code, 24 P.S. § 14–1402(a.1), which mandates that "Every child of school age shall be provided with school nurse services: Provided, however, That *the number of pupils under the care of each school nurse shall not exceed one thousand five hundred (1,500)*." (Emphasis added.) For the 1991–1992 school year, the District's enrollment totalled 1,631 students. Prior to the 1991–1992 school year, the District had employed two full-time nurses and was thereby unquestionably in compliance with Section 1402 of the School Code. Mussari argues that by demoting her to half-time status, the District was in violation of Section 1402 of the School Code since there was only ·one nurse for 1,631 students during those time periods in which she was off-duty. Nevertheless, the Board determined that one and one-half nurses were not only adequate to serve the health needs of its students, but that the District was in full compliance with the requirements of Section 1402 of the School Code.[6]

■ Battaglia and Mussari appealed the respective decisions of the Board to the Secretary of Education.[7] By separate orders dated April 7, 1995, the Secretary of Education affirmed the District's demotion of both Battaglia and Mussari. Battaglia and Mussari now appeal to our Court.[8] Since the legal issues presented by each are not exactly identical, we will address the merits of their appeals separately.

## II. Battaglia's Appeal

■ On appeal to this Court, Battaglia argues that the Board acted arbitrarily in demoting her. Battaglia, as she did below, relies primarily on the fact that the District's enrollment actually increased between the 1990–1991 and the 1991–1992 school years. She further alleges that the Board's use of a ten-year period for the purpose of establishing that the District was undergoing declining enrollment was both arbitrary and unreasonable. Battaglia thereby concludes that the Board's action violated Section 1124 of the School Code and that she should be reinstated to her previous full-time position with back pay.

Therefore, the Board did not have knowledge of this slight increase in enrollment when it made its decision to demote Battaglia and Mussari. Furthermore, specifically regarding the decision to demote Battaglia, the record shows that the District's secondary age population actually decreased by one student from 1990–1991 to 1991–1992.

5. The Board affirmed its decision to demote Battaglia by an order dated April 15, 1992.

6. The Board affirmed its decision to demote Mussari by an order dated April 15, 1992.

7. The Secretary of Education has exclusive jurisdiction over appeals relating to the demotion of professional employees under the School Code. Section 1151 of the School Code, 24 P.S. § 11–1151; Section 1131 of the School Code, 24 P.S. § 11–1131. *See Hritz v. Laurel Highlands School District*, 167 Pa.Cmwlth. 353, 648 A.2d 108 (1994), *petition for allowance of appeal denied*, 540 Pa. 634, 658 A.2d 797 (1995).

8. This Court's scope of review is limited to a determination of whether the Secretary of Education's decision was in accordance with law, the professional employee's constitutional rights were violated, and the findings of fact were supported by substantial evidence. *Brown v. School District of Cheltenham Township*, 53 Pa.Cmwlth. 483, 417 A.2d 1337 (1980). Furthermore, demotions of school district employees are presumed to be valid and will be overturned only where the demoted employee proves that the action was arbitrary, discriminatory, or based upon improper considerations. *Sharon City School District v. Hudson*, 34 Pa.Cmwlth. 278, 383 A.2d 249 (1978).

In support of her position, Battaglia cites to *Colonial Education Association v. Colonial School District*, 165 Pa.Cmwlth. 286, 645 A.2d 336, *petition for allowance of appeal denied*, 539 Pa. 696, 653 A.2d 1234 (1994). In that case, we reversed the school district's suspension of a teacher where enrollment was actually projected to increase in the year the teacher was suspended and where the school district based its decision on enrollment figures from an eighteen-year period. Although we did not hold that the school district was barred from suspending the teacher because of the projected increase in enrollment for the year of suspension, we found that the eighteen-year period used by the school district was an unreasonable and unjustified time standard for the purposes of Section 1124 of the School Code. *Id.* We further noted that we have ordinarily permitted school districts to use time periods of no more than seven years when calculating declining enrollment. *Id.; see also Platko v. Laurel Highlands School District*, 49 Pa. Cmwlth. 210, 410 A.2d 960 (1980) (seven years reasonable); *Andresky v. West Allegheny School District*, 63 Pa.Cmwlth. 222, 437 A.2d 1075 (1981) (five years reasonable); *Phillippi v. School District of Springfield Township*, 28 Pa.Cmwlth. 185, 367 A.2d 1133 (1977) (three years reasonable).

At oral argument, Battaglia additionally made reference to our recently published opinion in *Bachak v. Lakeland School District*, 665 A.2d 12, *petition for allowance of appeal denied*, 542 Pa. 674, 668 A.2d 1136 (1995),[9] in which we reversed the suspension of a teacher by the same school district as involved in the present case. Significantly, the teacher in *Bachak* was suspended from his job under circumstances which were factually very similar to those which we now have before us. In *Bachak*, the District relied upon the same ten-year period, 1981–1982 through 1990–1991, when it decided to suspend Bachak from his position. However, the Board's decision regarding Bachak was made prior to the 1993–1994 school year, a full two years after the Board's decision in the present case. Since the District's enrollment actually increased during that time period, we held that the Board's reliance on a ten-year period, which did not include the years immediately proceeding the suspension, was arbitrary and unreasonable.

■ Battaglia argues that we should reach the same result as in *Bachak* and *Colonial Education Association*, since the District's enrollment in fact increased during the 1991–1992 school year. However, we believe that Battaglia's argument is flawed since the Board made its initial decision to demote her in July of 1991, prior to the beginning of the 1991–1992 school year. This is the critical time period for the purposes of our review. We must review the Board's decision to demote Battaglia based on the information which was available at the time the decision was made. Although we quite possibly might reach a different conclusion if the Board had made its decision after, or even during, the 1991–1992 school year, it would be patently unfair to require the Board to act as a soothsayer and fully predict future fluctuations in the District's enrollment when it makes a determination to demote or suspend a teacher.[10] There is no evidence in the record that the Board knew that its enrollment would increase in the upcoming school year, nor has Battaglia alleged that the Board had such information in its possession, but failed to consider it when making its decision. Unlike *Bachak*, the Board here used the most recent enrollment figures available and fully considered the time period which immediately proceeded Battaglia's demotion when making its decision in the present case. Therefore, we find *Bachak* to be distinguishable on its facts.

**9.** Our opinion in *Bachak* was originally filed June 15, 1995, as an unpublished opinion. On September 21, 1995, by an order of this Court issued after briefs were filed in the present matter, *Bachak* was designated to be published.

**10.** We recognize that at the time of the Board's hearing on February 19, 1992, the Board did have available the enrollment figures for the 1991–1992 school year. However, while the Board's decision did not become final until after this hearing, *see Jefferson County–DuBois Area Vocational, Technical School v. Horton*, 50 Pa. Cmwlth. 445, 413 A.2d 36 (1980), the decision itself was actually made in July of 1991, prior to the beginning of the 1991–1992 school year.

In addition, although we have normally upheld demotions or suspensions based on declining enrollment only where the school district has based its decision on a period of seven years or less, we previously upheld the use of a ten-year period for this purpose in *Smith v. Board of School Directors of Harmony Area School District,* 16 Pa.Cmwlth. 175, 328 A.2d 883 (1974). Although in subsequent cases we have narrowly interpreted our decision in *Smith* based on the unusually small size of the student population involved in that particular case, we believe *Smith* supports our conclusion that a ten-year period is not unreasonable *per se.* This area of the law is very fact sensitive and does not lend itself easily to bright line rules regarding what length of time a school board may properly look at when determining whether to demote or suspend a teacher. For this reason, we believe it is appropriate to review demotion and suspension decisions on a case by case basis.

Although we are cognizant of the right of teachers to be free from arbitrary, capricious or discriminatory action, school boards have been granted broad discretion by the legislature in regard to the demotion and suspension of teachers, and so long as they do not abuse that discretion, it is not our role to place restrictions on how they choose to exercise it and thus become a super school board. *See School District of Philadelphia v. Twer,* 498 Pa. 429, 447 A.2d 222 (1982). Therefore, while we ourselves might not have chosen to base demotion decisions on a time frame of ten years, we cannot conclude that the Board's decision to do so was unreasonable or unjustified.

In the present case, the District's enrollment decreased by approximately twenty percent during the previous ten years. We believe that this constituted a "substantial decrease" as required by Section

1124(1) of the School Code, 24 P.S. § 11–1124. Accordingly, we affirm the Board's decision demoting Battaglia to half-time status.[11]

### III. Mussari's Appeal

On appeal to this Court, Mussari argues in addition to the arguments already addressed, that the Board's decision to demote her violated Section 1402(a.1) of the School Code, 24 P.S. § 14–1402(a.1), which requires that the number of students "under the care of each school nurse shall not exceed one thousand five hundred."

The District argues that the Board acted within its discretion in demoting Mussari based on the declining enrollment in the District. Also, in accordance with the decisions of the Board and the Secretary of Education, the District concludes that Mussari's demotion was in full compliance with Section 1402(a.1) of the School Code. Although it does not cite to any authority to support its claim or explain why it believes it is correct, apart from the fact that the Board and the Secretary reached the same conclusion, the District apparently believes that 1.5 nurses for its student population of 1,606 meets the technical requirements of Section 1402(a.1) of the School Code since the ratio of nurses to students is 1 to 1,070.

However, we not only disagree with the District's interpretation of Section 1402(a.1), but find it to be completely at odds with the plain meaning of the statute. Under Section 1921 of the Statutory Construction Act of 1972, 1 Pa.C.S. § 1921, absent any ambiguity, the plain meaning of the statute controls our interpretation of it. *See Borough of Glendon v. Department of Environmental Resources,* 145 Pa.Cmwlth. 238, 603 A.2d 226, *petition for allowance of appeal denied,* 530 Pa. 657, 608 A.2d 32 (1992).

11. We further note that even if the Board were to have had the enrollment figures for the 1991–1992 school year available at the time of its initial decision to demote Battaglia in July of 1991, it would have still been justified in demoting her. Although the overall enrollment in the District increased for that year, the secondary age population, the group which Battaglia actually taught, in fact declined for that year. *See supra* note 4. Also, during the previous ten years,

the art program had undergone an even greater decline in the number of students enrolled in it than could be attributed merely to the overall declining enrollment in the District. Therefore, the District's decision to demote Battaglia was also justified under Section 1124(2) of the School Code, 24 P.S. § 11–1124(2), which permits the demotion or suspension of teachers "as a result of substantial decline in class or course enrollments."

Section 1402(a.1) of the School Code unequivocally states that "the number of pupils under the care of each school nurse shall not exceed one thousand five hundred." 24 P.S. § 14–1402(a.1). It is obvious to us that the legislature, in its wisdom, determined that as a matter of public policy, school districts must provide at a minimum one nurse for every 1,500 students in order to protect the health and welfare of the school children of this Commonwealth. We cannot imagine the legislature being more clear in its intention that each school nurse should not have more than 1,500 students under his or her care.

Although the District's interpretation may make sense from a purely statistical or mathematical perspective, it makes absolutely no sense when applied to the real world which we live in. As Mussari has consistently pointed out throughout these proceedings, there is no such thing as half a nurse in the real world. In actuality, the District either has two nurses on duty (when Mussari and the full-time nurse are both working) or only one nurse on duty (when Mussari is not working and only the full-time nurse is on duty). At no time do they ever have one and one-half nurses on duty. Consequently, during those periods of the week in which Mussari is not working, the District has only one nurse serving a population of 1,606 students. This is clearly in violation of Section 1402(a.1) of the School Code. Therefore, the demotion of Mussari was illegal and must be reversed.[12]

### IV. Conclusion

For the reasons enumerated above, the Secretary's order affirming the Board's decision demoting Battaglia from her position as a full-time secondary art teacher to a half-time position is affirmed. However, the Secretary's order affirming the Board's decision

demoting Mussari from her position as a full-time nurse to a half-time position is reversed.

### ORDER

NOW, June 10, 1996, the Secretary of Education's order (No. 3–92A) in No. 1098 C.D. 1995, which affirmed the decision of the Board of School Directors of the Lakeland School District to demote Nancy Battaglia from a full-time position as a secondary art teacher to a half-time position, is hereby affirmed.

The Secretary of Education's order (No. 3–92B) in No. 1099 C.D.1995, which affirmed the decision of the Board of School Directors of the Lakeland School District to demote Patricia Mussari from a full-time position as a school nurse to a half-time position, is hereby reversed as being unlawful under Section 1402(a.1) of the Public School Code of 1949, Act of March 10, 1949, P.L. 30, *as amended,* 24 P.S. 14–1402(a.1), and the Lakeland School Board is directed to reinstate Mussari to her former full-time position with back pay, seniority and benefits.

PELLEGRINI, J., concurs in the result only.

KELLEY, Judge, dissenting.

I respectfully join in part and dissent in part to the majority's decision in these consolidated appeals. I join in the decision reached by the majority regarding the appeal of Battaglia. I believe that the Secretary of Education's order affirming the decision of the board to demote Battaglia from a full-time position as a secondary art teacher to a half-time position, should be affirmed. However, I disagree with the majority's reversal of the Secretary of Education's order affirm-

---

**12.** We note that the Secretary in his opinion relied on this Court's decision in *Phillippi* to support his conclusion that the Board acted properly and did not abuse its discretion. However, the Secretary has completely misinterpreted the holding in that case. In *Phillippi,* even after suspending a school nurse, the school district still had a student to nurse ratio which fell within the 1,500 to 1 limit imposed by Section 1402(a.1) of the School Code. We concluded that in that situation, the school board had the discre-

tion to determine that a demotion or suspension was necessary. However, contrary to the Secretary's interpretation, we did not say that the school board could exercise its discretion so as to ignore the clear mandate of the legislature where the requirements of Section 1402(a.1) were not met. In fact, not only does a close reading of *Phillippi* not support the Secretary's conclusion, but instead actually lends support to our holding in the present case.

ing the board's demotion of Mussari from a full-time position as a school nurse to a half-time position.

I believe that the majority's reasoning with respect to section 1402(a.1) of the Public School Code of 1949, 24 P.S. § 14–1402(a.1), is incorrect. It is undisputed that the total enrollment for the District is 1,606. As pointed out by the majority, the ratio of nurse to students is 1 to 1,070 when one full-time nurse and one part-time nurse is employed by the District.

Under section 1402(a.1), the number of pupils under the care of each school nurse shall not exceed 1,500. In order to comply with this mandate, section 1402(a.1) does not prohibit the employment of a combination of full-time and part-time nurses.

Recognizing the broad discretionary powers bestowed upon a school board in this area, I believe it is within the province of the General Assembly to take into account the realities of the "real world" which we live in and to provide for such in legislation. It is not within the province of this court to insert a legislative intent that a combination of full-time and part-time nurses may not accomplish the mandate provided for in section 1402(a.1) simply because "there is no such thing as half a nurse in the real world." Majority opinion, p. 13.

Accordingly, I believe that, in this case, the 1 to 1,070 ratio meets the requirements of section 1402(a.1) of the School Code. Therefore, I would affirm the Secretary's order regarding Mussari's appeal.